IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

FABIO F. CORREA,

          Petitioner,

vs.                                          No. CIV 03-391 BB/LFG

IMMIGRATION AND
NATURALIZATION SERVICE,

          Respondent.

## MAGISTRATE JUDGE'S FINDINGS
## AND RECOMMENDED DISPOSITION[1]

1. This is a proceeding for writ of habeas corpus pursuant to 28 U.S.C. § 2241, filed by Petitioner Fabio F. Correa ("Correa") on March 27, 2003. Respondent United States Immigration and Naturalization Service ("INS") filed its response [Doc. 8], and Petitioner filed a Reply thereto [Doc. 9]. Correa asks the Court to declare that he is a "National" of the United States and therefore: (1) cannot be deported; and (2) is eligible for certain prison programs. In its response, the INS asks the Court to dismiss the petition for lack of jurisdiction.

### Factual and Procedural Background

2. Correa was born in Colombia and is a citizen of that country. He entered the United States illegally but adjusted to lawful Permanent Resident status on May 11, 1990. [Doc. 8, Ex. 1]. In

---

[1] Within ten (10) days after a party is served with a copy of these findings and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such findings and recommenda-tions. A party must file any objections with the Clerk of the U.S. District Court within the ten-day period allowed if that party wants to have appellate review of the findings and recommendations. If no objections are filed, no appellate review will be allowed.

1997, Correa submitted an application for United States citizenship and paid a $95.00 application fee. [Doc. 8, Exs. 2,3]. An interview in connection with this application was scheduled on September 14, 1998, but Correa did not appear for the interview. There is no indication on the record that Correa took any further steps to complete the citizenship process, and it is undisputed that no action was ever taken on his application. [Doc. 8, Ex. 3].

      3. Correa was arrested at the Dallas/Ft. Worth airport on December 15, 2000. On February 1, 2001, an Information was filed in the United States District Court for the Northern District of Texas charging Correa with using the facilities of interstate commerce, that is, airports and a commercial aircraft in flight, with the intent to promote and carry on an unlawful activity, namely a business enterprise involving controlled substances. [Doc. 8, Ex. 4a].

      4. The statute under which Correa was charged, 18 U.S.C. § 1952, declares it to be a crime to travel in interstate or foreign commerce with intent to promote, manage, establish or carry on any unlawful activity and thereafter perform an act which promotes or carries on the unlawful activity. The definition of "unlawful activity" under the statute includes "any business enterprise involving . . . narcotics or controlled substances . . .."

      5. Correa pled guilty to the Information. On June 11, 2001, the District Court for the Northern District of Texas accepted Correa's guilty plea and adjudged him guilty of violating 18 U.S.C. § 1952. He was sentenced to a term of 60 months incarceration, with a two-year term of supervised release. The judgment also provides that, as a condition of supervised release, upon completion of his term of imprisonment, Correa is to be surrendered to immigration authorities for deportation in accordance with procedures set forth in the Immigration and Naturalization Act, 8 U.S.C. §§ 1101 *et seq.*, and if ordered deported or removed, he is to remain outside the United

States. [Doc. 8, Ex. 4]. He is currently incarcerated at the Cibola County Correctional Center in Milan, New Mexico.

6. On April 29, 2002, Correa was served by the INS with a Notice to Appear, notifying him that he was subject to removal from the United States pursuant to section 237(a)(2)(A)(iii) of the Immigration and Nationality Act ("INA"), for conviction of an aggravated felony, that is, an offense relating to the illicit trafficking in a controlled substance. [Doc. 8, Ex. 5]. On August 8, 2002, Correa was ordered removed from the United States by an Immigration Judge. [Doc. 1, Ex. A-1]. The order was upheld by the Board of Immigration Appeals on October 23, 2002, and a Warrant of Removal/Deportation was entered on November 18, 2002. [Doc. 1, Ex. B-2; Doc. 8, Ex. 7].

7. In November 2002, Correa wrote letters and made other attempts to have his citizenship application returned to him, along with the $95.00 application fee. [Doc. 1, Ex. B-1].

## Discussion

8. Correa asks the Court to order that he is a "National" of the United States, arguing that this status will prevent his deportation. In the "Relief Requested" portion of his petition, Correa "respectfully asks this court to rule that petitioner is considered a 'NATIONAL' of the U.S. and therefore cannot be deported from the U.S. This case should be remanded back to INS for adjudication of the claim as per this order." [Attachment to Doc. 1, at 4]. Correa also asserts that, as a "National," he will be eligible for a drug abuse program and will be transferred to a corrections facility where such a program exists, and further that he will be eligible for a halfway house program. He bases his argument that he is actually a U.S. "National" on the fact that he had an application for naturalization pending at the time he was ordered deported.

9. This Court does not have jurisdiction to entertain Correa's argument that his alleged status

3

as a National means that he cannot be deported. He had the opportunity to raise this argument in the deportation proceedings before the Immigration Court and, at least theoretically, on his appeal to the Board of Immigration Appeals (although that appeal was dismissed as untimely). A petition for review of a final order of removal must be filed with the Circuit Court of Appeals for the judicial circuit in which the immigration judge completed the removal proceedings, 8 U.S.C. § 1252(b)(2), and the petition must be filed within 30 days after the final order of removal. 8 U.S.C. § 1252(b)(1). Thus, jurisdiction lies with the Fifth Circuit Court of Appeals, not with this Court.

> Petitioner is attempting to resurrect and challenge the substance of the 1998 decision that he is deportable. Plainly, he wants this Court to intervene and have the INS reconsider his status as an alien who committed an aggravated felony. *See Doc. 2* (relief requested includes: "that this court to remand this case back to the IJ for a hearing and adjudication of all said issue[s] discussed in this motion;" "asks the court to rule that petitioner is considered a 'NATIONAL' of the U.S. and therefore cannot be deported from the U.S. this case should be rem[a]nded back to the BIA and INS for adjudication of this claim"). His § 2241 petition, therefore, should be construed as one for judicial review of an order of deportation. So construed, this leads me to the first jurisdictional problem. Statutorily, judicial review of orders of removal is lodged with the federal courts of appeal, not the federal district courts.

Villarreal Lopez v. U.S. Dept. of Homeland Security, No. 03-263, slip op. (D.N.M. May 15, 2003).

10. This court would have jurisdiction to make findings of fact on the question of Correa's nationality only if the Court of Appeals were to transfer the proceeding to this Court for a factual determination. 8 U.S.C. § 1252(b)(5)(B). This Court would consider transferring the matter to the Fifth Circuit, if it weren't apparent that the 30-day deadline had long since passed by the time Correa filed the petition in this case. Any such transfer would therefore be futile.

11. Correa argues, however, that this Court retains habeas corpus jurisdiction to hear his

4

claim of nationality.  In 1996, the Antiterrorism and Effective Death Penalty Act ("AEDPA") and the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") substantially revamped the Immigration and Nationality Act ("INA"), but these revisions did not remove the District Court's habeas corpus jurisdiction under 28 U.S.C. § 2241 to hear cases challenging removal determinations on constitutional grounds.  INS v. St. Cyr, 533 U.S. 289, 121 S. Ct. 2271 (2001); Jurado-Gutierrez v. Greene, 190 F.3d 1135, 1140 (10th Cir. 1999).

12.  However, this Court's habeas jurisdiction extends only to constitutional or statutory challenges.  Aguilera v. Kirkpatrick, 241 F.3d 1286, 1291 (10th Cir. 2001).  Review of factual issues is prohibited in a § 2241 habeas case; such questions must be brought on direct review in the Court of Appeals.  Bowrin v. INS, 194 F.3d 483, 490 (4th Cir. 1999); Galaviz-Medina v. Wooten, 27 F.3d 487, 491 (10th Cir. 1994) (the right to collateral attack by habeas petition does not confer the right to "a full review in district court of a BIA's deportation decision").

13.  The Court therefore finds that it does not have jurisdiction to address Correa's claim that he should not be deported because he is, allegedly, a U.S. National.

14.  Correa also argues that he should be considered eligible for certain prison programs, including a drug treatment program and a halfway house, because of his alleged status as a National. This request is not properly brought in a habeas proceeding, and even if this Court were to construe the request as a conditions-of-confinement claim under Section 1983, there is no indication that Correa has made any attempt to exhaust his administrative remedies.  Exhaustion of remedies is required by the Prison Litigation Reform Act of 1995, which reads: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are

available are exhausted." 42 U.S.C. § 1997e; Booth v. Churner, 532 U.S. 731, 121 S. Ct. 1819, (2001).

15. The Court notes that, in exhausting his administrative remedies by bringing his complaint to the attention of prison authorities, Correa will have the formidable burden of demonstrating that the Immigration Judge's finding of deportability was erroneous, explaining why his untimely appeal of that ruling should be excused, and convincing prison authorities that he should be considered a "National" even though he abandoned his application for citizenship by failing to show up for an interview and taking no further action for several years, and is now asking that the application and fee be returned to him.

## Recommended Disposition

That the petition be denied and the case be dismissed without prejudice for lack of jurisdiction.

*Lorenzo F. Garcia*
Lorenzo F. Garcia
Chief United States Magistrate Judge